The Commissioner of the Internal Revenue, number 06-3798. Mr. Penton and Mr. Green. Whenever you're ready. It pleases the Court, Your Honors. My name is Vincent Pantema. I represent the PMTA-ILA Vacation Benefit Fund and O'Neill Consulting Corporation. I'd like to reserve three minutes for rebuttal. Yes, sir. Also, Your Honor, I'd like to acknowledge Joe Surback, who is on the brief, and counsel. Your Honor, this is an appeal from an action for a refund for a $79,000 tax penalty for failure to file payroll taxes electronically. Can I get you right to the Ducato case, sir? Pardon me, Your Honor? Right to the decision in Bocuto, or however you want to say it. How do you say that? It's in the Kumbha, Your Honor. Bucato. Bucato. Let's look at Bucato. You're Italian. You ought to know. Kumbha. I told Surback that it's Bucato, Your Honor. Okay. I guess I'm having a little bit of a struggle understanding how we could view that as Ducato. You seem to be saying, hey, even though that says what it says, it's dicta and it's not binding on the court. Did I understand you right? Yes, Your Honor. I don't even believe that that's a 7502 case. Even though it's signing 7502? Yes. That's the gloss that Congress put on the physical delivery rule. The statute that allows there to be retroactive proof of delivery if mailing occurs before the delivery. What happened to Bucato was the taxpayer sent in, I'm not sure, I think it was a refund request, sent in a refund request, but the postmark itself was after the deadline for filing. The deadline was February 11 and the postmark was February 12. Which takes it right out of 7502. So there was no need for the court to address 7502. But the testimony that, in fact, they had sent it on the 11th was prompted by the postmark. Yes, Your Honor. So when the court got to 7502, there was really no need to address that issue. And the court volunteered that there was, the way to prove that there was a postmark was not through a presumption, but was only under 7502. Okay. So let's assume, for the sake of discussion that you're right, and that the court made a statement about 7502 that didn't need to and it's overstated, what's wrong with the reasoning of Bucato where the court said, look, there's a statute, it lays out what the exceptions are, and it trumps the common law. Where's the flaw in that reasoning? Let's assume, all right, let's assume it says it trumps the common law. There are, in that case, three judges, which struck me as unusual. I thought back in the 60s it was a three-judge panel. No, it's what happens. Oh, judges. It's three judges, but if somebody, for some reason, there's a death or whatever, the two judges are allowed to decide under federal law. Yeah, well, Judge Staley committed the court. We don't believe that Judge Staley committed this court in 1960 to an interpretation of a statute that more contemporary cases from 1990 to 2004 have held otherwise. Okay. Well, then explain to me why the other ones do, because I'm asking about the reason. What's wrong with the logical flow of Judge Staley's interpretation of the effect of 7502? 7502 is not mutually exclusive with common law mailbox rule. What's wrong with it really can be summed up by Judge Beam in that Estate of Woods case where he said simply, if Congress intended that there not be a presumption other than what's in the statute, it would have said so. And that really sums it up. Here, 7502 is not our, I should say, it is not our case. We've never relied on 7502. What we have here, Your Honor, is two letters that everyone agrees, including the court, were letters, valid informal requests for refunds. Those letters are dated before the drop dead date of June 23rd. The date really isn't all that significant. The fact of receipt is the significant thing here. Well, Your Honor. The mailbox rule is presumptive, not preclusive. The mailbox rule doesn't stop you from bringing in other evidence. The mailbox rule is helpful when you don't have any other evidence, but here you've got other evidence, and the mailbox rule does not stop you from bringing that in. You say to agree with me. The district court did stop us. Well, the district court said what you've got here is the government saying our administrative files don't have the letters in them. Therefore, there is proof of non-delivery, and you're not allowed to bring in any extrinsic evidence to show that you actually did make the mailing on the date that was prior to the drop dead date. There is significant evidence without a postmark that we did make that mailing. As a matter of fact, the proof of the pudding is that there was a refund for the second quarter 2000 penalty, and the only way there could have been a refund is if the IRS determined that the letters that were sent in May of 2003 and June of 2003 were timely. I thought there was an additional request for refund after the original. Yes, Your Honor. That's this case. This case, what happened was... Oh, I'm sorry. There was a meeting with the revenue agent. That resulted in the refund. Yeah, there was. There was a formal request, but the government acknowledges and Judge Prater found that those letters were valid informal request letters, which under the law are sufficient to protect the taxpayer to timely file his or her appeal. But Judge Prater did, and in reading the opinion, it looks like with some reservation said, look, all you can do is rely on 7502C. The only presumption you got is if you send it by registered mail or certified mail. But you don't need a presumption. Pardon me? You don't need a presumption. Well, here we're relying on the presumption. We're saying 7502 doesn't mean anything to us. We're saying we can prove actual mailing. Well, actual receipt. And to bridge the gap between the actual mailing and the timely receipt, we have to bridge that some way. 7502 bridges it, but it also can be bridged by a common law mailbox rule, as the 8th, 9th, 10th circuits have said. So, yeah, we can rely on the presumption. Okay, but, I mean, it seems to me you don't even need the common law mailbox rule. You can testify that you had a conversation with so-and-so of the IRS about what was in the letters on a date which would validate the receipt of the letters. Oh, sure, Judge, and we do. And I have a whole list here of all the facts where, at a minimum, there can be a genuine issue of disputed facts as to the mailing. The problem here is the unusual circumstance where the revenue agent, who tried to be helpful, did not put these letters in the administrative file because the administrative file was closed because the money had been levied. He created his own work file, put it on his desk, and worked with these folks. But then he later claimed that he didn't get it right. No. He said, I possibly could have gotten it. I can't recall, but I can't say I didn't get it. However, I can tell you I destroyed my own personal file where if I had gotten those letters, they would have been in there. Why would he have destroyed his own personal file? I don't know, especially if we're still in the statute of limitations period. Did he recall the May 7, 2003 discussion? Yes, he did. And one of our witnesses says he, Mr. Dugan, the revenue agent, not dumping one, Your Honor, he tried to be helpful, told him that I got your May 8th letter. And if you look at everything that followed, there was a precipitating event because these folks, they went bananas. They said $160,000 we have to pay in the tax fee. And Mr. Dugan, the revenue agent, described the accountant and the O'Neills as in a panic, as frantic. And after that, there was a lot of discussion and communication and then a meeting in August. At that meeting, the revenue agent was very helpful. He said file 843, which is the formal request for refund. That was filed in September, possibly October. I don't know why we have a difference there. And the IRS said, okay, with respect to two of the three quarters that you were penalized for, we're going to give you a refund. But with respect to the second quarter of 1999, we're not going to give you a refund because it was on time. It was too late. But you can't say that and still give a refund for the 2000, second quarter 2000 penalty without implicitly acknowledging that those letters that were sent before the two-year statute, which ended on June 23, 2003, which they used to deny the 1999 penalty, was ignored for the 2000, second quarter 2000 penalty because they granted the refund. So if nothing else, Your Honor, we're presenting you. We don't think that in 1960, Judge Staley and Judge Goodrich committed to what we view as a more modern view of this statute and one that reconciles, in a personal view, more fairly and less harshly and with a less wooden, with all due respect, and myopic approach that the government has. I think you are constricting your argument too much. I think you can also say the statute is irrelevant to us. It is. We have other evidence, so forget the statute. We've got a ton of it, Judge, and what I'm saying, at a minimum, I think there's enough evidence in the record now for this court to say, to issue a decision, but at a minimum, this is summary judgment, and Judge Prather did not look at any evidence with regard to the date of the mailing nor with regard to the date of the delivery other than to say the government's position is, excuse me, Your Honor, my red light's off. That's okay. Other than the government saying the letters aren't in our administrative file, and they can't be because the revenue agent said, I didn't put them in there. The file was closed. I put them in my own file. We had a meeting. Things looked good. It looked like you were going to get the refund, and I threw my file away. Let me ask you a question on the refund. The sanction was for not filing electronically. Yeah. And you didn't file electronically, so how do you get a refund? I mean, because the penalty was 10%. We filed by coupon. We paid the money instead of paying it. Yeah, I know. You paid the money, but the payment was of a size that it was required to be done electronically, and it wasn't, so you got a penalty. So the penalty was deserved. So how can you get a refund on a penalty that's deserved? Because the IRS, not on the record, but there was some issue back then with the electronic mailing system. The government was saying, this is all screwed up. I tried to set it up, and the IRS wouldn't complete the setup. Is that the base? Yeah, there was some problem with it, Your Honor. And that's the merits. That will go to the merits of the case in front of Judge Prather because, you know, we agreed. And the other case where the IRS is now trying to get the refund back? Yeah. Yes, Your Honor. Thank you, Your Honor. I'm not done with you yet. Oh. We've still got another issue. Oh, standing. Standing. Yes, Your Honor. Supreme Court case Williams doesn't help you all that much, does it? Yeah. The question here is, you've got an entity that's cooperating with you, the fund, in filing this. You filed for it, and it looks like you filed quite properly for it. The entity isn't, although you have reimbursed it, and you've done the, you know, what a lot of professionals would say is the best practices by reimbursing it. But it's still a party here, right? Yes, sir. It's still cooperating with you, isn't it not? O'Neill? Actually, it's the reverse. The PMTA and the ILA are still cooperating with O'Neill. O'Neill paid the money out of O'Neill's pocket. But doesn't Williams make it clear that while it granted relief in that case, its third-party administrator here doesn't look like it would have standing? That case was one where the woman had to lean against her house. Yeah, the lady. Here you voluntarily paid. How does that allow you? Okay, you would say, okay, subrogation. But how does that really allow you to step into the shoes for standing purposes in this particular case? To paraphrase a famous quote, what is meant by was? What is meant by voluntary? Here, the money – O'Neill is a fiduciary. As fiduciary, it's a close relationship with the fund. The fund has no – the fund has been paid. The fund has no incentive. The fund is still a party, right? The fund is still a party, yes. The fund's in the case making the claim, right? Pardon me, your Honor? I mean the fund is in this case making the claim, right? And cooperating with it. And O'Neill, even under Williams, your Honor, it was involuntary. Otherwise, we would have had to go through another litigation. That is the PMTA suing O'Neill, having an actual liability, and then O'Neill coming in here. And under Williams, O'Neill had a party. But if PMTA is a party, even if O'Neill didn't have standing, the fund has standing, right? I mean, I'm sorry. Yes, the fund has standing. Yes, that's right. I assume that if the fund ultimately were to prevail, it would give you the money back that you're still out of pocket. Would there be a lawsuit? Would there be a lawsuit? I bet you there would be. There would have to be. But in any event, there's somebody here who's got standing, and we can rest assured of that. Oh, yes, sir. Yes, there is. Because, I mean, it's a two-fold test. One is close relationship, and the other is hindrance. Hindrance. And let's assume for the moment there's a close relationship. That's actually, I'm glossing over what is a difficult question. But as to a hindrance, I think what Judge Jordan and I are saying is, how are you hindered from getting to the merits of this case and having a resolution if we decide in your favor with regard to the 7502 mailing issue?  I'm sorry, Judge. It's Rehnquist who said when there's a lack of. . . But Kowalski was a case that actually denied standing, right? But in defining what is a hindrance, he said when there's a lack of incentive to challenge by the taxpayer or the necessary zeal. But it sounds like we're beyond incentive. The party is actually working with you. We are. . . The fund is working with O'Neill under an agreement. But lastly, and I'm sorry. I do apologize for the time. Go ahead. If you look at the St. Joe Title Insurance case, that title agent was in the same exact position as O'Neill. The title agent screwed up and sent $30,000 to the government. The person who was financing his home said, hey, no, that's my money. The title agent said, oh, we're sorry. The title agent took the $30,000, gave it to the mortgagor. Like here, O'Neill gave us the $160,000. The title agent brought an action because the $30,000 was erroneously paid to the IRS. That title agent, no different than O'Neill, that title agent had standing. The title agent didn't pay the tax. The tax came out of the guy who was refinancing his house's funds. So it's, in my view, they're in the same spot. Thank you. Thank you. Green. Good morning, Your Honors. Kenneth Green on behalf of the Commissioner. I'd like to start by making a few factual. . . Well, let me see if I can just ask some questions on facts, see if I understand correctly. Did O'Neill try to enter the fund in the IRS's electronic tax payment program? Is that correct? I am not sure about that. That goes to the merits, and the merits weren't. . . No. Did O'Neill try to enter the fund? This is leading up to the procedural issue that we spent most of our time on. Did O'Neill attempt to enroll the fund in the IRS's electronic tax payment program? I can't answer that question. I don't think it's in the record. Do you know it? No, I do not know. That goes to the merits of the issue, and I don't know. Well, we don't care if it goes to the merits or if it's not in the record. We just want to know. . . Yes, I don't know the answer to that question. Do you know whether the IRS thought that the fund was supposed to file electronically? Yes, that's why the penalty was set against the fund. Do you know? The IRS thought that they were to file electronically, but apparently, was there a glitch between the IRS and the fund? Because the fund didn't know necessarily what it was to do. In fact, the understanding was, or at least what was said, and maybe not in the record, the fund tried to file electronically. It didn't get confirmation that it could file electronically. It was unsure what to do and thought that the default would be, look, let's just file by paper. It turns out that the IRS had agreed that they could file electronically, and therefore, because they didn't file electronically, assessed a penalty. You're speaking to facts regarding the merits, and I simply cannot answer that question. I simply do not know. I can find out and send a letter if the court so desires, but I simply do not know. . . Actually, I would appreciate it if you would do that. Okay. Because do you know if the IRS has ever assessed another penalty like this before? I do not know. So was this the first time that this kind of penalty . . . In other words, the argument that they're making is, look, we tried to comply. We tried to do what we could. The IRS is a big entity. They didn't get information to us. We then found out, although there was a screw-up with Mr. Kowalik, but we later found out within two years, after the June 25th of 2001, we found out within two years that there was $160,000 assessed. According to Mr. Dugan, apparently, I think what is in the record, is on May 7th of 2003, they got on the phone and they were very disturbed, trying to figure out what's going on, and there was a letter composed that they claimed that they sent out on May 8th, and then subsequently there was a letter composed that they said that they sent out on June 13th. Isn't . . . So your argument, then, is what? Simply that 7502 preempts? I mean, 7502 is what was put in in 54 that allows you and me to file at 1159 p.m., right? Right. So we can go to the post office, and if I file on April 15th at 1159, I'm okay. Back to Judge Ross' point, what's that got to do with the testimony that, hey, we got stuff to you. We're telling you we sent stuff to you prior to June 25th, 2003, the deadline for making an objection. Well, with 7502, first of all, the only testimony that they had is they have no proof that the government actually received any documents. Well, Mr. Dugan said it might have gotten to him. He destroyed his file. He said he may or may not have. He has no recollection of receiving it in any conversation. But they're saying they sent it. That's just their testimony that they sent it. That does not mean they received it. They have no testimony. At this point in the proceedings, it's the plaintiff's testimony that determines whether or not the judgment will be granted. The court cannot make, as you well know, a determination of fact. The plaintiff's evidence is that we mailed the letter, we have corroborating evidence from the date on the computer file, we have corroborating evidence from the discussion with the IRS agent. That's where I would disagree with you. They do not have corroborating evidence because the letter was mailed. Look, we are talking about their evidence. I understand. In that evidence, they have not putting it in the mail. Well, they have their testimony. 7502C says you look exasperated. 7502C says that the registration or certification is prima facie evidence of mailing. Prima facie evidence is not exclusive evidence. It's not preclusive evidence. And if they have other evidence of mailing or if they had, for instance, a photograph of the letter lying on the IRS agent's desk with a copy of the New York Times of that day, that would be evidence of receipt. Correct. And they are claiming that they've got various evidence, other than a postmark, of mailing and receipt, including conversations with the IRS agent about what was in the letter. Now, is that not creating an issue of fact which would prevent a grant of summary judgment in this case? Well, there is one incorrect assertion in your statement, and that is that they have even offered any evidence of receipt. What they have offered is a conversation before these letters were allegedly sent where the- No, they're offering a conversation after the letters were sent about the subject matter that was in the letters. So arguably, how did the IRS agent know what to talk about in this conversation if the information had not been conveyed to him in some manner? And the plaintiffs are saying that that information was conveyed to him via the letters. It had been conveyed to him by the conversation prior to the alleged sending of the letters. Well, that's not the way I read the issues here. And they were precluded by the district court from further presentation of this evidence. But if they create an issue of fact that they have mailed the letters, even simply I would think by the testimony that they did mail the letters, then how can we grant summary judgment or how can we affirm a grant of summary judgment when there is an issue of fact as to whether the letters were in fact mailed and received? So far as I understand the record, there is nothing in the record that establishes that. Okay. So then if there is something in the record, would you agree that summary judgment was improper? If there was something in the record that established actual receipt, evidence of actual receipt? You know, let me ask a question because I think that's where we're getting the hang of it. You used the word establish. And not to judge Roth or forgive me for interpreting her words, I think the question she's putting to you is premised on the summary judgment standard we're bound by, which requires us to draw every inference in favor of your opponent, every inference from the factual record. They stand up here and tell us we have proof and there's evident indications in the record that they have proof of people who will say forget the mailbox rule. I'm telling you I mailed it. And I talked to this guy and he tells me he got it. And when you see Agent Dugan's comments, they're equivocal at best. You could draw inferences that indicate he did get it. When you draw all these inferences in their favor, if the standard you want us to apply is do they have evidence establishing receipt, aren't you asking us to ignore the summary judgment standard which requires us to draw every inference in their favor? I think the bottom line, well, if they could have evidence of actual receipt, there may be some argument that summary judgment was inappropriate. Even then, however, I think that the whole point of 7502 was to preempt these kinds of factual disputes where there is any question as to receipt. And I will grant you you have the 2nd and 6th Circuit saying that, but you also have the 8th, 9th, and 10th Circuits going the other way. And so we have to make a decision. And 7502C says it's prima facie evidence. It did not say it's the only evidence. The 8th, 9th, and the 10th Circuit and Judge Baldock, what they said is that there could be certain evidence to establish proof of postmark, not proof of mailing, but proof of postmark. But isn't that important when it's the date of mailing that's important? And if these letters exist, the date of their mailing, it's not a question was it mailed one day or the next day. And those cases are where you want to prove that you mailed your letter on April 15th and not on April 16th. Well, that is correct. The taxpayers here have never made the argument that they proved actual receipt. Their whole argument is that the only thing that they want to do is to be able to rely on the comments. But they want to be able to put in evidence to show that, in fact, they had objected properly prior to June 25th, 2003. And that was precluded because there was an interpretation of 7502 preempting. What you're hearing is that that may not be the only way to show. I mean, here you've got a case where somebody filed on time. They filed by what they thought was the only way they could file, which was by paper because they didn't know that they could file electronically. They paid the right amount of tax. So then what happens is they are assessed a $160,000 penalty for, in effect, writing a paper check rather than paying electronically. And you're saying that's too bad. So sad. And they object to the penalty within the two years. And they say they sent a letter, which the district court has held would be a valid informal request for refund, which you have not appealed. So the issue is was that letter, in fact, sent or not? Did that letter exist? It's not the issue of when was it sent. It's the issue of did this letter exist. And the plaintiffs testify that they drafted the letter, they retyped the letter, they mailed the letter, and they discussed the letter after its mailing with the IRS agent who acknowledged its receipt. Now, that seems to me to raise a real issue of fact that this letter did exist. First of all, we don't agree that necessarily it was a valid informal claim for refund. Well, the district court has so held it, you have not appealed it. The district court held it for the purposes of the summary judgment motion, and we have agreed that for the purposes of the summary judgment motion, it's an informal claim for refund. It was a final order, and you didn't appeal it. So I think that's the law of the case now. You didn't appeal it. That was a final order. For the purposes of the summary judgment motion, correct. And that was a final order on appeal, and when the plaintiffs appealed, you did not cross appeal. So I think you got the law of the case there. But anyway, if you want to file that, argue that later on. That's not what we're dealing with today. Again, I go back to the point that I don't believe that the taxpayers here have ever argued actual receipt, have ever specifically stated that during their conferences subsequent to the sending of the letter, there was ever an agreement that the letter was received. So what they are doing, in fact – That's an important point, Mr. Green, and I want you to help back that up, because what I understand you to be saying is you're hearing for the first time this argument that there's evidence of receipt in the record. Is that what I hear you saying? Outside of reliance on the common law presumption, their whole argument is, yes, as I understand it, their whole argument has been that 7502 is totally irrelevant to this case and that they are relying on a common law presumption that a properly mailed envelope prior to a due date is determined received within a normal period of time and that they mailed it well before the due date, which if they mailed it when alleged would be true, and that the common law presumption of mailing would be sufficient to them. So if we've heard argument today in the past that, look, there's evidence in the record that shows a precipitating event, you don't have to be fanciful about this Third Circuit. There's evidence to show there was mailing, and there's a fair inference of receipt because there were discussions, things happened after that that you can infer happened because there was receipt. And can I refer you – That's something you're hearing for the first time? Well, if you look at the blue brief, page 9, they quote, Revenue Officer Dugan reported that he had received the May 8, 2003, letter and attachments that everything looked good and that we're going to put it through and get you a refund, appendix pages 210 to 11, Pontarelli Deposition. Sounds like they've been arguing all along that there is acknowledgement from the IRS that the letter was received. Well, that does suggest that they have stated that. The focus of their argument, as I understood it, and their only argument was not actual receipt but was the common law presumption. And that's the way the district court understood their entire argument. No, the district court said that the mailbox rule will not permit you to make that argument. Make the common law presumption argument. Yeah. They have the facts in the record which demonstrate acknowledgement by the IRS that the letter was received. So for the sake of discussion, even though you've got no more time for discussion, let me ask you this, if I could, Mr. Green. Assume for the purposes of this conversation that what we're talking about is an assertion by the taxpayer that there's evidence in the record from which it could be fairly inferred that there was actually receipt. And so, 7502 or not, that should be enough to get us past summary judgment on this point. What's your response to that? Well, I would go back to what Judge Baldock said in the Sorrentino case, that mere self-serving testimony simply can't be enough to even jump over a summary judgment hurdle under these circumstances. There has to be some actual proof, some corroborating evidence other than one person say so and then the other person saying, I don't remember. But if they were so agitated on May 7, why in the world would they not have sent the letter on May 8 or on June 13 when they didn't hear back? I can't answer that. And the fact that they may have sent it simply would be irrelevant if it had not been received. That's the whole point to 7502. But Dugan is saying that, or I should say, Portarelli is saying that Dugan had told him in a conversation that he had received it. I mean, why can't that at least come in? If that isn't an issue of fact, what is? Well, again, that's simply self-serving testimony. Isn't all testimony self-serving? With absolutely no corroborating evidence and in the face of Isn't that for the jury to decide? In the face of Congress enacting 7502, which was supposed to do away with all these sorts of factual disputes and have a clean rule giving the taxpayer an easy method by which to establish delivery and timely delivery, I think that the court here would be correct in saying that self-serving testimony, as Judge Baldock said in Sorrentino, is simply not sufficient. Okay. But if there were some corroboration. For example, the precipitating event argument. That's not testimony from the other side. That's something in the record that shows, yeah, there was a response. IRS started doing things. The fact that there was a government response and action, is that not corroborative of their version of the facts if you view the inferences in their favor? Again, there was a conversation prior to the alleged sending of the letter. There were meetings thereafter. I got you. Thank you very much. Thank you. Senator Santino, we're going to hold you to your time. Yes, Your Honor. One question is, I guess dumb questions jumped out at me from minute one here. Why didn't you just send the darn thing registered mail or FedEx? I don't know, Your Honor. I can tell you. I know, it's a dumb question. You don't have to answer. Operation. But I'll give you some advice, Your Honor. If you're going to mail your tax return at 1159, you better make sure you have proof that you mailed it or you have somebody in the car who says you walked in the post office with the return and walked out of the post office without it. Because if the IRS tells you later, two years later, they never got your return, you're done. When I paid my estimated tax after I read your brief, I took it upstairs and had it stamped for Steve. You didn't want to do the stamp, did you? I go to the post office and stand in line like a fool. But get that $0.35 proof of mailing. Also, Your Honor, Judge Jordan, you asked me a question about policy. 7502 was remedial. It wanted to put gloss on the harshness of the prior actual physical delivery rule, which the courts had already begun to do by applying the common law mailbox rule. It's not the exclusive means. And also, to answer your inquiry, it's simple and it's trite, and I'm sure we've all argued it. If you walk like a duck and talk like a duck and act like a duck, well, then maybe you're a duck, and we should have that chance to present that evidence. It's not simply Ms. O'Neill saying she mailed it. I have eight or nine points I can give you of other corroborative evidence, and that raises an issue. And to correct the record, I don't believe I said we have new proof of evidence of receipt. I did make the argument that there was a precipitating event and a whole series which would inferentially show receipt. Thank you. And my comments on the other evidence is what I got out of your brief. And that's only some, Your Honor. Thank you both, Counsel. The argument I would like to ask, Counsel, if they could get together with the clerk's office, I believe in Philadelphia, and I would request that a transcript be prepared of this oral argument. And then also, Mr. Green, for the questions I ask you to get back to me, how much time do you think you're going to need? Well, some of it's going to have to come from the clerk. Can you get back to us in two weeks? The Kindly or Friendly or IRS, will they? Well, the question is? On the attempt to file electronically on whether there had been an attempt, whether that had been approved. Did they attempt to enroll in the IRS electronic tax payment system? When was confirmation given to them? One other question I asked. Were the taxes timely paid? Has anyone else been fined for it? And I'm sorry, the last question was, has anybody else paid this type of penalty for paying by paper check rather than electronically the taxes that were due? I believe the taxes were timely. I gather that's not an issue. Yeah, they were timely paid in full, but they were paid not electronically. I believe there were $150,000 fined. Well, if you would get together with the clerk's office in Philadelphia. Linda, do you want to give them a number? Eric Hernandez. Thank you very much. Thank you. I take the matter under advisement. I call the next case, which is Scott V. Beard et al., number 06-4439. Ms. Goldstein and Mr. Ilone.  Thank you.